(No. 18817.—)
ETTA B. TYMONY, Appellant, *vs.* EARL W. TYMONY *et al.*
Appellees.

*Opinion filed October 25, 1928.*

MORRIS, CASHIN & DICKERSON, (EDWARD H. MORRIS, of counsel,) for appellant.

JOHN L. FOGLE, for the guardian *ad litem* of appellee Robietta Leach.

Mr. JUSTICE DUNN delivered the opinion of the court:

Etta B. Tymony filed a bill in the circuit court of Cook county alleging that she was the owner of certain real estate in that county, her title being derived through a warranty deed to her from Anna M. Leach and her husband, Robert M. Leach, dated June 1, 1918; that Robert M. Leach died April 20, 1921, and Gregory T. VanMeter, public administrator of Cook county, was appointed administrator of his estate and inventoried the real estate of the complainant above mentioned as belonging to the estate of Leach; that James L. Miller presented a claim against the estate of Leach, which was allowed, for $552.15; that complainant's title was clouded by reason of inventorying her property as belonging to the estate of Leach, and she made the administrator, James L. Miller, Earl W. Tymony and Robietta Leach, the infant daughter of Anna M. and Robert M. Leach, defendants to the bill, praying for the removal of the cloud and that her title be quieted. The bill was answered and cross-bills were filed by James L. Miller, and by Robietta Leach by Thomas J. Holmes, her guardian *ad litem*, Miller praying that the real estate be declared to be the property of the estate of Leach and held for the payment of Miller's claim allowed in the probate court, and Robietta Leach denying that the deed to the complainant was ever delivered, but alleging that if it ever had been delivered it was intended to be held in trust for Robietta, and

praying that the court would decree the deed to the complainant to be void or that she be decreed to hold the title in trust for the cross-complainant. The cause was referred to a master, who reported recommending a decree that the estate of the complainant in the real estate in question is held in trust by her for Robietta Leach and that there be another reference for an accounting.

The master's report found that the deed of June 1, 1918, from Anna M. and Robert M. Leach to Etta B. Tymony was made without consideration of any kind and was never delivered; that at the time of making the deed Mrs. Leach was on her deathbed and was incapable of understanding the nature or contents of the deed; that her mental powers were so impaired that she was incapable of understanding the nature and effect of the deed and that her name was signed to it by some other person; that Leach from June 1, 1918, to April 20, 1920, the date of his death, had full and absolute control over the real estate and personal property, hired the help, did the banking business and conducted the storage business; that the premises were conveyed to Mrs. Tymony and held by her in trust for Robietta Leach; that a fiduciary relation existed between Mrs. Tymony and Mrs. Leach; that Mrs. Tymony has been appointed by the probate court of Cook county the legal guardian of the person and estate of Robietta; that the material allegations of the cross-bill of Robietta had been substantially proved, and that a decree should be entered in accordance with the cross-bill and the findings in the master's report, and that Mrs. Tymony should account for the personal property belonging to Mrs. Leach at the time of her death.

Etta B. Tymony objected to all the findings of the master except that the court had jurisdiction and that on June 1, 1918, the deed in question from the Leaches to her was made, and the finding as to the deaths of Anna M. and Robert M. Leach on July 18, 1918, and April 20, 1920. The objections were overruled and ordered to stand as excep-

tions to the master's report. The court overruled all the exceptions and entered a decree finding that the material allegations of the cross-bill 'of Robietta Leach were true; that the equities of the cause were with her; that the deed of June 1, 1918, was made without consideration, was not delivered in the lifetime of Mrs. Leach, the grantor, and did not convey the title to the premises but the title descended to Robietta, who has been ever since the death of Mrs. Leach the owner in fee simple of the premises; that upon the death of Leach, Mrs. Tymony and her husband took possession of all the goods and chattels of the business conducted by Leach on the premises and have ever since remained in possession of them; that Robietta on the death of her father became the owner of all the chattels and the business so conducted on the premises and is entitled to an accounting from Mrs. Tymony and her husband, Earl W. Tymony, for the profits of the business and for the chattels so taken possession of by Mrs. Tymony and Earl W. Tymony. It was therefore decreed that the deed from Mrs. Leach to Mrs. Tymony is void and did not convey any title to Mrs. Tymony and is removed as a cloud on the title of Robietta; that the cause be referred to a master to take an accounting of the profits derived from the property and the business, and that a receiver be appointed of all the property, chattels and business of Mrs. Leach.

The decree is inconsistent with the master's report. The master's report is inconsistent with itself. The master's finding that the deed was not delivered is inconsistent with his finding that the property was conveyed to Etta B. Tymony in trust for Robietta Leach. The basis for the decree is that the deed was never delivered.

The master's report consists of 1500 pages containing the testimony of witnesses and there are 400 pages of exhibits. The appellant filed an abstract of 25 pages, of which 10 are devoted to the 1500 pages of testimony, two to listing a few of the many exhibits in the record, and

the remainder to the pleadings and the decree. The abstract is composed of disconnected fragments of the testimony of three witnesses for the complainant in chief, two witnesses for the defendant and three witnesses for the complainant in rebuttal. The guardian ad litem filed an additional abstract without an index, in which the testimony of some of the witnesses whose testimony is included in the appellant's abstract is set out at somewhat greater length and the testimony of other witnesses not mentioned in appellant's abstract is abstracted. Neither abstract, in the fragments of evidence which have been included for the purpose of informing the court of the evidence on which the cause was submitted for decision, furnished much information as to what evidence the chancellor and master had before them for consideration. Apparently the object of the appellant was to carefully restrict the evidence abstracted to such as would be sufficient to make a prima facie case of the execution and delivery of the deed. The appellees' abstract contained some testimony tending to sustain the other side of this issue and more evidence on the question of the mental and physical condition of Anna M. Leach and her competency to make the deed. It also contains evidence as to the fiduciary relation existing between Mrs. Tymony and Mrs. Leach, and admissions, statements and acts of Mrs. Tymony tending to show such relationship and the exercise of undue influence in the making of the deed. The two abstracts together do not contain any coherent recital of the evidence from which the facts on which the rights of the parties depend can be determined, and we will not attempt an independent investigation of the record. There has been a failure of the parties to comply with the rule requiring a complete abstract of the record.

The evidence, however, in regard to the delivery of the deed has been abstracted by both parties. It consists of the testimony of Alfred T. Leach, a nephew of Robert M. Leach, and William A. Robinson, a notary public, who cer-

tified to the acknowledgment of the deed on June 3, 1918; that Leach came to him with the instrument and took him to Leach's residence, where he found Leach's wife sick, and that he took the acknowledgment of both of them and put his signature on it and delivered it to Leach. Alfred T. Leach testified that he saw the deed about a month prior to Mrs. Leach's death. Mr. Leach, Mrs. Leach and Mrs. Tymony were present. Mrs. Tymony had the deed and handed it to him and told him to take it down and record it; that the Leaches had given over the property to her. He took it to the office and put it in the desk. He saw it again late in the fall,—probably in December,—when he took it down and had it recorded. The man in the recorder's office wrote on the back of the deed, "Mail to A. T. Leach, 4430 S. State Street." It came back through the mail and the witness placed it in the desk again. This was all the testimony on the subject in the abstract of the appellant, but in the abstract of the appellees it appears that on cross-examination the witness testified that the document was then in the same condition it was at the time Mrs. Tymony gave it to him. The stamps on the deed, however, bore the cancellation marks, "A. M. Leach, 12-16-18." The deed was recorded on December 16, 1918. This circumstance indicates that the witness was mistaken in stating that stamps were on the deed when it was given to him by Mrs. Tymony, but we do not regard this fact as sufficient to require that his testimony be disregarded. It is not claimed that there is any other evidence in the record in regard to the delivery of the deed, and this is not sufficient to sustain the finding of the court that the deed was not delivered to the complainant in the lifetime of Anna M. Leach. The decree must therefore be reversed.

If this were a suit between adults this opinion might end here. The only party defendant to this suit interested in the title to the property in controversy, Robietta Leach, is an infant. She was four years old at the time the deed was

made, six years old when her father died and nine years old when this suit was begun. The complainant in the suit is her guardian, appointed by the probate court of Cook county. In accordance with the requirement of the law, Thomas J. Holmes was appointed her guardian *ad litem.* An answer was filed by her, but it has not been abstracted. We assume it was an ordinary formal answer calling for strict proof. Whatever the answer was, full proof was required of the complainant, for nothing is to be intended or taken as admitted against an infant defendant. (*Tuttle* v. *Garrett,* 16 Ill. 354; *Reavis* v. *Fielden,* 18 id. 77; *Chaffin* v. *Heirs of Kimball,* 23 id. 36; *Waugh* v. *Robbins,* 33 id. 181; *Wilhite* v. *Pearce,* 47 id. 413; *Preston* v. *Hodgen,* 50 id. 56; *Barnes* v. *Hazleton,* id. 429; *Bennett* v. *Bradford,* 132 id. 269; *Gooch* v. *Green,* 102 id. 507.) The rule is inflexible in this State that the guardian *ad litem* shall make a defense of the interests of the infant as vigorous as the nature of the case will admit. (*Sconce* v. *Whitney,* 12 Ill. 150; *Enos* v. *Capps,* id. 255.) It is understood to be the special duty of such guardian to submit to the court for its consideration and decision every question involving the rights of the infant affected by the suit. (*Rhoads* v. *Rhoads,* 43 Ill. 239.) It is the duty of the guardian *ad litem,* when appointed, to examine into the case and determine what the rights of his ward are and what defense his interest demands and to make such defense as the exercise of care and prudence will dictate. He is not required to make a defense not warranted by law but should exercise that care and judgment that reasonable and prudent men exercise, and submit to the court for its determination all questions that may arise and take its advice and act under its direction in the steps necessary to preserve and secure the rights of the minor defendants. Whenever the property rights of an infant are drawn into litigation and the infant himself, whether as plaintiff or defendant, has been brought into court, he at once becomes the ward of the court, and it is the duty of

the court to see that his rights as such are properly protected. If the general guardian who undertakes the performance of this trust, or the guardian *ad litem,* fails to properly protect the interest of his ward, it is the duty of the court of its own motion to compel him to do so. If, for instance, the infant is defending and his guardian has failed to file some pleading essential to the admission of his defense or has filed one so imperfect as not to be sufficient for that purpose, it is the duty of the court, whenever the fact is disclosed, to see that the proper pleading is filed on behalf of the infant before proceeding. (*Lloyd* v. *Kirkwood,* 112 Ill. 329.) While the guardian *ad litem* will not be warranted in interposing useless or vexatious defenses, the law contemplates a defense in fact so far as necessary to protect the rights and interests of his ward. (*Stunz* v. *Stunz,* 131 Ill. 210; *McCarthy* v. *Cain,* 301 id. 534.) Evidence was introduced tending to show that Mrs. Tymony occupied a fiduciary relation to Anna M. and Robert M. Leach, and the master found that such fiduciary relation did exist. The court, basing its decree upon the non-delivery of the deed, made no finding as to the existence of the confidential relation. If the deed was procured by the undue influence of Mrs. Tymony, and, as found by both the master and chancellor, without consideration, it was subject to be set aside at the suit of Robietta. If a fiduciary relation existed and the deed was without consideration, undue influence on the part of Mrs. Tymony is presumed, and the burden is on her to show that no undue influence was exercised but the act was the voluntary act of the grantor, that it was for her interest and that she was acting on independent advice. The cross-bill filed was based upon want of consideration and delivery and the allegation that it was intended that any record title that was placed in Mrs. Tymony should be held in trust for Robietta. This cross-bill does not contain allegations to support a decree setting aside the conveyance on the ground of undue influence or the exist-

ence of a fiduciary relation, and it should be amended in this respect.

The decree is reversed and the cause remanded, with directions that there be a new hearing, that leave be given to the parties to amend the pleadings as they may be advised, and that any additional evidence on behalf of any of the parties may be heard, including the issue as to the delivery and consideration for the deed.

*Reversed and remanded, with directions.*