**In the Matter of the Estate of Pervus Brandt, Deceased. John Brandt, et al., Objectors-Appellants, v. Federal Sign and Signal Corporation, R. R. Cultra, d/b/a Cultra Nursery, Leslie Bork, d/b/a Bork's Nursery, Hosman Greenhouse, Chattam Coal Company, B. R. Tongren, Edith Brandt, John Scheffers, Dirk Hoekstra, Theodore Hoekstra, and Pullman Bank and Trust Company, Claimants-Appellees.**

Gen. No. 68-79.

Third District.

May 29, 1969.

Martin, Loomos, Drucker & Karcazes, of Chicago, for appellant.

Gray, Thomas, Wallace, Feehan and Baron, of Joliet, and Clinton & Tongren, of Peotone, for appellee.

ALLOY, J.

The record in this case discloses that Pervus Brandt had operated a nursery business in Chicago under the name of Brandt's Nursery. On February 16, 1966, Brandt was declared incompetent by the Will County Circuit Court, and his wife, Edith Brandt, was appointed Conservator of his estate. Pervus Brandt died about six months later (August 18, 1966) and had never been restored to his rights. After Mrs. Brandt had been appointed Conservator, she moved the nursery business to Monee, Illinois, where she operated under the name of Brandt's Nursery. In Monee, in the conduct of the nursery business, she incurred obligations and made collections, without any order of the court approving or granting authority to her to do so as Conservator. During this period of time, prior to the death of Pervus Brandt, Mrs. Brandt contracted for various materials and services under the name of "Brandt Nursery, Edith Brandt." No claims were filed against the Conservatorship of Pervus Brandt.

After the death of Pervus Brandt, a total of 14 claims were filed against the estate. The children of Pervus Brandt objected to the claims, and the trial judge directed all claimants to file their appearances and answer or otherwise plead to objections filed therein on or before February 6, 1968. Only Pullman Bank and Trust Company and B. R. Tongren filed answers. At the hearing on the 14 claims, the trial court allowed the various claimants to testify on their own behalf and overruled objections made to such testimony under the provisions of the so-called "Dead Man's Act"

174

(1967 Ill Rev Stats, c 51, § 3). The trial court allowed 11 of the claims. On four of the claims, the only testimony was by the claimant. On two of the claims there was no testimony but only a stipulation that Mrs. Brandt ordered the merchandise, and on one claim there was apparently no testimony of any kind.

Only two of the claimants, who also filed answers to the objections, Pullman Bank and Trust Company and B. R. Tongren, filed briefs on appeal in this Court. The remaining 9 claimants whose claims were allowed did not appear and filed no briefs on appeal in this Court. On appeal in this Court, the objectors assert that the court erred in allowing claims as against the estate which were not proven by clear and convincing evidence; that the court allowed improper testimony contrary to the so-called "Dead Man's Act," and that the court also assumed the function of an advocate on behalf of various claimants. We find nothing in the conduct of the trial court which shows that it dealt improperly or in any manner which would, in itself, justify reversal (People v. Smith, 18 Ill2d 547, 165 NE2d 333).

The claim of Pullman Bank and Trust Company was based on a promissory note dated April 6, 1966. This note was signed by Mrs. Edith Brandt, and the words "Conservator of the Estate of Pervus Brandt" were typed below her signature after she had already signed. The record shows that Pervus Brandt first borrowed $5,000 on March 14, 1963. This note was renewed from time to time, and the last note actually signed by Pervus Brandt was on December 7, 1965. Before this note was due, Pervus Brandt was declared incompetent. When the note became due, Mrs. Brandt signed the new note dated April 6, 1966. The Pullman claim was based on this note. No money was distributed to Mrs. Brandt and the note was a renewal of the former note of Pervus Brandt. While it was dated April 6, 1966, apparently it was actually signed in July of 1966. After the death of Pervus

Brandt, Pullman Bank filed a claim for the $5,000 as against the Pervus Brandt estate. No claim had ever been filed by the Pullman Bank as against the Conservatorship of Pervus Brandt.

The claim of B. R. Tongren was for attorney's fees resulting from services performed for the Pervus Brandt Conservatorship. Tongren and his law partner performed services for the Conservatorship. The services were described in detail by testimony of Mr. Tongren. The attorneys prepared the petition for appointment of the Conservator together with notices and summons. They attended hearings and prepared the order appointing Conservator with the oath and bond. An inventory and various other documents were prepared and filed. Certain documents were also prepared in connection with the proposed sale and mortgage of the Conservatorship property, at the request of Mrs. Brandt, but were not filed when she changed her mind about the method of proceeding with the Conservatorship. Appearances in court were specifically shown by claimant Tongren, who also testified as to preparation of a final report, his attempts to have it approved, and his eventual withdrawal as attorney for Mrs. Brandt at her request. The claim of attorney Tongren was for $950 in attorney's fees and $118 in costs advanced. The trial court allowed the claim for $600 in attorney's fees and $118 in costs advanced.

With respect to the Pullman Bank claim for $5,000, it is clear that there was evidence showing that the $5,000 note on which the claim was based was a renewal of a previous note which had been executed by Pervus Brandt. Brandt had first borrowed the money in March of 1963. The note was renewed several times by him through execution of a renewal note. It became due after Brandt had been declared incompetent. Mrs. Brandt then signed a renewal note and it was shown that she did not receive any money from the bank at the time the note was signed. It was also shown that the words "Conservator of the estate of Pervus Brandt" were typed in after

176

the note was signed as a result of an understanding with Mrs. Brandt.

■■■■ Evidence of the making of a note and its delivery is sufficient to establish a prima facie case for recovery on the note (In re Estate of Burke v. Sullivan, 247 Ill App 233). The evidence was clear that Mrs. Brandt signed the note. The only question was whether she signed the note obligating herself as an individual or whether she signed the note as Conservator for Pervus Brandt. The parties concede that Mrs. Brandt had no court authority as Conservator to execute the note prior to the time she signed the note. The evidence clearly establishes, however, that the note was actually a renewal note, since no money was received by Mrs. Brandt and there was sufficient evidence that Mrs. Brandt intended to sign the note as Conservator for Pervus Brandt. The fact that she had not obtained court authorization to sign the note as Conservator did not prohibit this note from becoming an obligation of the estate of Pervus Brandt (Bruner v. Wolford, 356 Ill 514, 191 NE 70). The trial court apparently felt that there was a sufficient showing that the act of Mrs. Brandt in executing the note was an action as Conservator and so intended, particularly in view of Brandt's death a few months thereafter. Although Mrs. Brandt was allowed to identify her signature as her sole testimony, this bit of testimony was unnecessary for the purpose of establishing the claim since there was other independent testimony of an eyewitness who saw her sign the note. A judgment of a trial court should not be set aside if there is evidence in the record which supports the decision (In re Estate of Brumshagen, 27 Ill App2d 14, 169 NE2d 112). On the basis of the record in the present case, it is apparent that there is substantial evidence to support the conclusion of the trial court that the obligation represented by the note to Pullman Bank was an obligation of the estate of Pervus Brandt.

As to the claim of B. R. Tongren for attorney's fees, it is clear that the determination of the trial court was not against the manifest weight of the evidence. The Conservatorship was closed without notice to attorney Tongren and it was proper for him to file his claim as against the estate of Pervus Brandt. The question of the proper amount to be allowed as attorney's fees in the estate of a decedent or estate of an incompetent is properly one for the court (In re Estate of Klappa, 18 Ill App2d 501, 506, 152 NE2d 754). While the attorney objects on appeal to a reduction of his claim from the requested amount of $950 to $600, we cannot say on the basis of the record before us that the decision of the trial judge in making such allowance was contrary to the manifest weight of the evidence. The circumstance that the final report which attorney Tongren had prepared, listed the attorney's fees as $907 with some work still to be done, did not amount to a specific finding by the court with respect to attorney's fees as shown in the Conservator's final report, and thus it was proper for the trial court to make a specific finding of the $600 figure following a hearing in which there was detailed testimony as to the services performed.

As to the remaining 9 claims, none of the claimants had filed an answer to the objections to the various claims and few of them, if any, were represented by attorneys at the hearing on the claims. Such claimants have filed no brief in support of their claims in this Court. It would appear from the record that improper testimony in violation of the Dead Man's Act referred to was admitted to prove the various claims, and in one instance, there was apparently no evidence to prove the claim. In view of the record in this cause, the allowance of such claims cannot be sustained.

It is, therefore, our conclusion that the trial court was correct in allowing the claim of Pullman Bank for $5,000 and that the trial court was likewise correct in allowing

the claim of B. R. Tongren for $718. The remaining 9 claims, on the basis of the record, should not have been allowed and the allowance of such claims will, therefore, be reversed. This cause will, therefore, be remanded to the Circuit Court of Will County with directions to such court to disallow the 9 claims herein referred to. The allowance of the claims of Pullman Bank and Trust Company in the sum of $5,000 and of B. R. Tongren in the sum of $718 are expressly approved and confirmed.

Reversed in part, affirmed in part and remanded.

STOUDER, P. J. and RYAN, J., concur.